**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 23 2005**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ERIC WARD,

        Plaintiff - Appellant,

    v.

STATE OF UTAH, a governmental
entity,

        Defendant,

OLENE S. WALKER, Governor of the
State of Utah; and MARK
SHURTLEFF, Attorney General of the
State of Utah,

        Defendants - Appellees.

No. 03-4245

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D. Ct. No. 2:01-CV-447-DAK)**

---

Brian M. Barnard (James L. Harris, Jr., with him on the briefs), Utah Legal
Clinic, Salt Lake City, Utah, appearing for Plaintiff-Appellant.

Jerrold S. Jensen, Assistant Attorney General (Mark L. Shurtleff, Attorney
General, with him on the brief), Utah Attorney General's Office, Salt Lake City,
Utah, appearing for Defendants-Appellees.

---

Before **TACHA** , Chief Circuit Judge,    **BALDOCK** , and  **HENRY** , Circuit Judges.

**TACHA** , Chief Circuit Judge.

Plaintiff-Appellant Eric Ward burned a mink stole as part of an animal-rights protest. The State charged Mr. Ward with disorderly conduct, and because he allegedly acted "with the intent to intimidate or terrorize another person," Utah Code Ann. § 76-3-203.3, the charge was enhanced from a misdemeanor to a felony. The State, however, quickly dropped the enhancement charge as mistakenly filed and eventually dropped the disorderly conduct charge as well. Mr. Ward filed suit seeking a declaration that section 76-3-203.3 violated his rights protected by the First and Fourteenth Amendments of the United States Constitution and Article I, §§ 7 and 15 of the Utah Constitution. The District Court rejected these claims and granted summary judgment for the Defendants. We take jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

## I. BACKGROUND

Mr. Ward regularly participates in public demonstrations to express his views concerning the ethical treatment of animals. On November 14, 1999, Mr. Ward engaged in such a demonstration in Magna, Utah. Although the record reveals very little about this incident, Mr. Ward admits that the protest included a candlelight vigil and the burning of a mink stole. Mr. Ward maintains that the demonstration was lawful. Nevertheless, on December 4, 2000, the State charged

him with misdemeanor disorderly conduct, *see* Utah Code Ann. § 76-9-102, and with an enhancement provision increasing the charge to a felony. This enhancement provision authorized increased punishment for persons committing certain enumerated offenses, including disorderly conduct, with the intent to "intimidate or terrorize." Utah Code Ann. § 76-3-203.3.

The record is unclear whether the State brought the disorderly conduct charge because Mr. Ward burned the mink stole or for other reasons—nor does it explain why the State waited over a year to file these charges. The record also fails to include any evidence on which the State could have based its application of the enhancement provision. In any event, the State dropped the enhancement charge on December 27, 2000, and eventually dropped the disorderly conduct charge as well. Nevertheless, a felony arrest remains on Mr. Ward's record.

Mr. Ward plans to continue participating in animal-rights protests and is fearful that the State will again charge him with the section 76-3-203.3 penalty enhancement. In order to avoid future prosecution, Mr. Ward brought a 42 U.S.C. § 1983 action in the District Court for a declaration that section 76-3-203.3 is unconstitutional, *see* 28 U.S.C. § 2201(a), an injunction prohibiting the State from enforcing it against him, *see* 28 U.S.C. § 2202, and attorney's fees and costs, *see* 42 U.S.C. § 1988(b). The suit named as defendants the State of Utah and its Governor and Attorney General, in both their individual and official capacities.

The State was never served and therefore is not a party to this suit. Defendants-Appellees Governor Olene Walker and Attorney General Mark Shurtleff filed a motion to dismiss the claims against them in their individual capacities but conceded that the suit, insofar as it sought only prospective injunctive relief, could be properly maintained against them in their official capacities.

In addition to their motion to dismiss, the Defendants also filed a motion for judgment on the pleadings. The Defendants argued that section 76-3-203.3 requires the commission of a predicate misdemeanor offense, and because Mr. Ward only intends to engage in lawful protests, the enhancement statute will never apply to him. Before the District Court had ruled on the Defendants' motions, Mr. Ward moved for summary judgment, arguing that there were no disputed issues of fact and that he was entitled to judgment as a matter of law. The District Court concluded that Mr. Ward lacked standing and dismissed the suit.[1]

Mr. Ward appealed the District Court's decision. This Court held that Mr. Ward had standing to contest the constitutionality of this statute and thus reversed and remanded. *Ward v. Utah*, 321 F.3d 1263 (10th Cir. 2003) ("*Ward I*"). On remand, Mr. Ward moved to renew his motion for summary judgment, relying

---

[1]Because the District Court determined that Mr. Ward lacked standing, the court considered neither the merits of Mr. Ward's summary judgment motion nor the Defendants' motion to dismiss.

-4-

exclusively upon his arguments made prior to our reversal in *Ward I*. Similarly, the Defendants merely renewed their motion in opposition to summary judgment.

Although Mr. Ward's complaint alleged constitutional violations under both the United States Constitution and the Utah Constitution, he raises only his federal arguments on appeal. Mr. Ward's state constitutional arguments, therefore, are waived. *Powers v. Harris*, 379 F.3d 1208, 1214 n.11 (10th Cir. 2004).

Mr. Ward presented three arguments below, namely, that section 76-3-203.3 was unconstitutionally broad; unconstitutionally vague; and an improper time, place, or manner restriction. The District Court rejected each of these arguments. The court held that section 76-3-203.3 was not facially overbroad because it requires the commission of a misdemeanor as a predicate offense; it was not unconstitutionally vague because it has a scienter requirement; and it is a legitimate time, place, manner restriction because it is a content-neutral regulation preventing the destruction of property and true threats. The court then granted summary judgment on all claims for the Defendants sua sponte. Mr. Ward timely appealed.

## II.  STANDARD OF REVIEW

We review the grant of summary judgment de novo, applying the same standard as the district court. *First Unitarian Church of Salt Lake City v. Salt*

-5-

*Lake City Corp* ., 308 F.3d 1114, 1120 (10th Cir. 2002).  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  We review the factual record and all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment, which given the District Court's sua sponte ruling is Mr. Ward.  *See First Unitarian Church* , 308 F.3d at 1120.  Finally, "[b]ecause First Amendment interests are involved, we have an obligation to conduct an independent review of the record and to examine constitutional facts and conclusions of law de novo."  *Id*.

Although "the practice of granting summary judgment sua sponte is not favored," *Procter & Gamble Co. v. Haugen* , 317 F.3d 1121, 1132 (10th Cir. 2003), a sua sponte order of summary judgment may be appropriate if "the losing party was on notice that she had to come forward with all of her evidence." *Celotex Corp. v. Catrett* , 477 U.S. 317, 326 (1986).  If a losing party was not prejudiced by the lack of notice, we will not reverse simply because the grant of summary judgment came sua sponte.  *See Scull v. New Mexico* , 236 F.3d 588, 600–01 (10th Cir. 2000).  Here, Mr. Ward does not argue that he suffered prejudice by lacking notice of the need to come forward with evidence.  Indeed,

he has never contended that he would bring forward additional material facts if given the opportunity.

### III. AS-APPLIED CHALLENGE

Mr. Ward labels his First Amendment argument, below and on appeal, as both an as-applied and a facial challenge. Because Mr. Ward's substantive arguments have only presented facial challenges, however, one has difficulty deciphering what constitutes Mr. Ward's as-applied challenge. In his reply brief, Mr. Ward attempted to clarify his as-applied arguments, but even the reply brief fails to make an as-applied challenge.

Mr. Ward first argues that Utah's statute is "overbroad on its face and as applied to [him]." But an overbreadth challenge is a facial challenge. *See Faustin v. City and County of Denver, Colo.*, 268 F.3d 942, 948 (10th Cir. 2001); Stuart Buck and Mark L. Rienzi, *Federal Courts, Overbreadth, and Vagueness: Guiding Principles for Constitutional Challenges to Uninterpreted State Statutes*, 2002 Utah L. Rev. 381, 383, 385 n.11. We therefore consider Mr. Ward's overbreadth arguments as solely a facial challenge.

Mr. Ward also claims that admissions made by the appellees in the answer brief confirm that he has an as-applied challenge. He cites the following passages from the appellees' brief: "application of the statute in the underlying case . . . was clearly a mistake on behalf of the prosecutor"; "the charge against Plaintiff in

the underlying case . . . was clearly inappropriately applied"; "the statute was inappropriately applied to Ward."

These statements merely concede that the state erred in charging Mr. Ward under section 76-3-203.3. Although misapplication of a criminal statute could potentially lead to a malicious prosecution charge, treating the events of Mr. Ward's prior arrest as an as-applied challenge to the constitutionality of the statute would result in deciding the validity of a statute with respect to a factual situation that the state concedes the statute does not cover. Furthermore, all of the "admissions" are found in the Defendants' brief on appeal and therefore, to the extent that Mr. Ward relies on these statements to support his claims, his argument is waived because it is first raised in his reply brief. *See United States v. Murray,* 82 F.3d 361, 363 n.3 (10th Cir. 1996). We therefore construe Mr. Ward's arguments as facial challenges to section 76-3-203.3. [2]

## IV. FACIAL CHALLENGE

Facial challenges are strong medicine. Article III of the Constitution ensures that federal courts are not "roving commissions assigned to pass judgment on the validity of the nation's laws," but instead address only specific "cases" and

---

[2]Nothing we say today forecloses the possibility of mounting an as-applied challenge to section 76-3-203.3 in a future case—assuming it is properly raised. Indeed, the fact that we hold that section 76-3-203.3 is not facially unconstitutional does not bar such a future as-applied challenge.

"controversies." *Citizens Concerned for Separation of Church and State v. City and County of Denver*, 628 F.2d 1289, 1295 (10th Cir. 1980). As the Supreme Court recently observed, "facial challenges are best when infrequent. . . . Although passing on the validity of a law wholesale may be efficient in the abstract, any gain is often offset by losing the lessons taught by the particular, to which common law method normally looks." *Sabri v. United States*, — U.S. —, 124 S. Ct. 1941, 1948 (2004) (internal citations omitted). Because facial challenges push the judiciary towards the edge of its traditional purview and expertise, courts must be vigilant in applying a most exacting analysis to such claims. *Broadrick v. Oklahoma*, 413 U.S. 601, 611–12 (1973). With the risks associated with facial challenges in mind, we now turn to Mr. Ward's three challenges to section 76-3-203.3.

A.    Overbreadth

Mr. Ward first argues that section 76-3-203.3 is unconstitutionally overbroad. To decide the overbreadth challenge, our "first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." *Hoffman Estates v. Flipside*, 455 U.S. 489, 494 (1982). Furthermore, when the statute in question is aimed at regulating conduct—as opposed to "pure speech"—our inquiry must also account for the state's legitimate interest in enforcing its "otherwise valid criminal laws." *Broadrick*, 413 U.S. at 615.

*Broadrick* recognizes that statutes regulating conduct, " if too broadly worded, may deter protected speech to some unknown extent." *Id.* Nonetheless, the Supreme Court held that, despite the potential for chilling speech, "there comes a point where that effect--at best a prediction--cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe." *Id.* Consequently, the Court stated that " particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Id.*

Mr. Ward presents three overbreadth arguments. First, he argues that section 76-3-203.3 is overbroad because all protests and demonstrations potentially fall within its scope, and this amounts to a substantial amount of protected speech. Second, he argues that unlike most hate-crime statutes, section 76-3-203.3 contains no limitation on the class of victims to which this provision applies and therefore applies to more protected speech than other hate-crime statutes. Third, Mr. Ward contends that section 76-3-203.3 is overbroad because it does not require the commission of an underlying offense. We consider each in turn.

1.

First, Mr. Ward urges that section 76-3-203.3 is overbroad because "[i]t is difficult to imagine a protest or demonstration that would not raise the specter of a violation . . . . By definition, a demonstration . . . seeks to encourage or discourage conduct usually protected by law." Mr. Ward then proceeds to list a series of hypotheticals where a protestor may attempt to discourage a third party's exercise of a state or federal right and thus be subject to section 76-3-203.3, which he claims illustrates that this provision is overbroad. We disagree.

As is clear from *Broadrick*, a court should not invalidate a statute on its face simply because the statute may criminalize some protected speech. Instead, the court must determine how much protected speech is impacted "in relation to the statute's plainly legitimate sweep." *Id*. We therefore begin by looking at the text of the statute to determine its plainly legitimate sweep.

Section 76-3-203.3 provides in relevant part:

(2) A person who commits any primary offense with the intent to intimidate or terrorize another person or with reason to believe that his action would intimidate or terrorize that person is guilty of a third degree felony.

(3) "Intimidate or terrorize" means an act which causes the person to fear for his physical safety or damages the property of that person or another. The act must be accompanied with the intent to cause a person to fear to freely exercise or enjoy any right secured by the Constitution or laws of the state or by the Constitution or laws of the United States.

-11-

We interpret state laws according to state rules of statutory construction, *Citizens for Responsible Gov't State Political Action Comm. v. Davidson*, 236 F.3d 1174, 1190 (10th Cir. 2000), and therefore interpret this statute based on its plain language, *O'Keefe v. Utah State Retirement Bd.*, 956 P.2d 279, 281 (Utah 1998) ("A fundamental rule of statutory construction is that statutes are to be construed according to their plain language.").  Based upon the plain language of the text, we conclude that section 76-3-203.3 has the following three elements to be proved by the prosecution:  (1) The defendant committed an enumerated primary offense; (2) with the specific intent to cause, or with reason to believe that his action would cause, another person to fear for his physical safety or damages the property of that person or another; and (3) with the specific intent to cause, or with reason to believe that his action would cause, another person to fear to exercise freely or enjoy any right secured by state or federal law. [3]

As to the first element of a section 76-3-203.3 charge, Mr. Ward does not argue that the primary offense for which he was charged, disorderly conduct, nor any other primary offense listed in the statute, is unconstitutional. [4]  It is Mr.

_____

[3]We discuss the inclusion of the specific-intent requirements in elements two and three below.

[4]The possible primary offenses are:  assault and related offenses, misdemeanor property destruction, criminal trespass, misdemeanor theft, offense of obstructing government operations, any offense of interfering or intending to

(continued...)

-12-

Ward's burden to demonstrate, based upon the law and actual facts, that substantial overbreadth exists. *Virginia v. Hicks*, 539 U.S. 113, 122 (2003). In our analysis, then, we must *assume* that any conduct that is sanctioned by section 76-3-203.3 " falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct." *Broadrick,* 413 U.S. at 615. Furthermore, even when conduct such as that which constitutes a primary offense under section 76-3-303.3(5) is intended to be expressive, the First Amendment does not protect it.[5] Indeed, the Supreme Court has specifically held that "violence or other types of potentially expressive activities that produce special harms distinct from their communicative impact," such as those enumerated in section 76-3-203.3, "are entitled to no constitutional protection." *Roberts v. United States Jaycees*, 468 U.S. 609, 628 (1984).

---

[4](...continued)
interfere with activities of colleges and universities, misdemeanor offense against public order and decency, telephone abuse offenses, cruelty to animals, and any weapons offense. Utah Code Ann. § 76-3-203.3(5).

[5]To be perfectly clear, we do not hold that every primary offense listed under section 76-3-203.3(5) passes constitutional muster under an as-applied or facial challenge. Because Mr. Ward fails to allege that any of the underlying primary offenses are themselves constitutionally infirm, as is his burden, we do not reach this question. We merely assume for the sake of this appeal that these primary offenses are constitutional. Thus, we specifically reserve whether the primary offenses listed under section 76-3-203.3(5) run afoul of the First Amendment either as applied or facially.

While section 76-3-203.3's second element—the specific intent to cause physical harm or destroy property—places restrictions on a person's ability to speak, the Supreme Court recognizes that the First Amendment permits prohibiting "true threats" even though such a threat may have expressive content. *Virginia v. Black*, 538 U.S. 343, 359 (2003) ("[T]he First Amendment permits a State to ban a 'true threat.'"); *Watts v. United States*, 394 U.S. 705, 708 (1969) (per curiam) (same per the federal government). As the Court recently held, "'[t]rue threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Black*, 538 U.S. at 359. The Court went on to hold: "The speaker need not actually intend to carry out the threat. Rather, a prohibition on true threats 'protects individuals from the fear of violence' and 'from the disruption that fear engenders,' in addition to protecting people 'from the possibility that the threatened violence will occur.'" *Id.* at 359–60. Section 76-3-203.3(3), which penalizes "an act which causes the person to fear for his physical safety or damages the property of that person," is an archetypal example of a true threat. Mr. Ward does not contest this determination.[6]

_____

[6]This is not to say that we cannot imagine an as-applied challenges where a person's conduct might satisfy this statutory requirement yet not satisfy the

(continued...)

-14-

Given that Utah may constitutionally ban disorderly conduct even though it is potentially expressive and that Utah may ban true threats, we are left to consider whether section 76-3-203.3 is unconstitutionally overbroad because it only enhances such violations when the defendant seeks to dissuade third parties from freely exercising their state or federal rights. The Court's unanimous *Wisconsin v. Mitchell*, 508 U.S. 476 (1993), decision controls our analysis.

In *Mitchell*, the defendant committed an aggravated battery and his sentence was heightened pursuant to an enhancement statute, which increased sentences for those who intentionally selected the victim because of race. The Court unanimously upheld the statute against a First Amendment overbreadth challenge. As in this case, the defendant in *Mitchell* argued that the "penalty-enhancement statute is invalid because it punishes the defendant's . . . motive, or reason, for acting." *Id*. at 487. The Court rejected this argument, noting that "motive plays the same role under the [enhancement] statute as it does under federal and state antidiscrimination laws, which we have previously upheld against constitutional challenge." *Id.* Furthermore, the statute was constitutional because it was "aimed at conduct unprotected by the First Amendment." *Id*.

---

[6](...continued)
Court's definition of a true threat. Because we are reviewing only a facial challenge, however, we find that in relation to section 76-3-203.3's plainly legitimate sweep it does not affect a substantial amount of protected speech. *See Broadrick*, 413 U.S. at 615.

The reasoning of *Mitchell* is equally applicable here. Just as in *Mitchell*, because section 76-3-203.3 requires the commission of a primary, conduct-based offense prior to its application, the statute is aimed at conduct unprotected by the First Amendment and therefore it is not unconstitutionally overbroad. Further, as in *Mitchell*, the inclusion of a motive element does not render this statute constitutionally infirm. Therefore, we reject Mr. Ward's first overbreadth challenge.

2.

Mr. Ward counters that section 76-3-203.3 is overbroad because, unlike most hate crime statutes, section 76-3-203.3 does not limit its application to specific classes of victims (e.g, persons victimized because of their race, religion, or sexual orientation).[7] This factor, however, does not affect our overbreadth analysis.

Although the text of section 76-3-203.3 does not include the term "hate crime," the term is included in the title, "Penalty for hate crimes — Civil Rights violation." When the bill was originally introduced, it apparently included specific classes of potential victims. *See* Terry S. Kogan, *Legislative Violence*

---

[7]For states that do include such victim-class specifications see, for example, Ohio Rev. Code § 2927.12; Vt. Stat. Ann. tit. 13, § 1455; Va. Code Ann. § 18.2-57(B); Wash. Rev. Code 9A.36.080; and Wis. Stat. § 939.645(1)(b).

*Against Lesbians and Gay Men*, 1994 Utah L. Rev. 209, 214–23 (providing a more thorough discussion of the bill's legislative history). The Utah Legislature, however, thought this focus on distinct groups unwise. While it kept the term "hate crime" in the title, it expanded the scope of the bill to include all persons who might be intimidated or terrorized. In light of this clear textual expansion, the Utah Court of Appeals describes section 76-3-203.3 as an "Exercise of Rights Statute," instead of a hate-crime statute. *J.W. v. State*, 30 P.3d 1232, 1232 n.1 (Utah Ct. App. 2001).

To determine what role the statute's title plays in interpreting the statute, we look to state law. *See Davidson*, 236 F.3d at 1190. The Utah Supreme Court has clearly "held that a statute's title is not part of its text and cannot be used as a tool of statutory construction unless the statute's language is ambiguous." *Stephens v. Bonneville Travel, Inc.*, 935 P.2d 518, 521–22 (Utah 1997). Mr. Ward fails to identify any statutory text that, due to its ambiguity, requires an interpretation in light of the statute's title. We, therefore, will not construct the statute in light of its title. Instead, we look to the statute's text as the primary method of construing its meaning. *See O'Keefe*, 956 P.2d at 281. Because the statute's text does not use the term "hate-crime," Mr. Ward's argument concerning the proper scope of a hate-crime statute plays no role in our overbreadth analysis.

3.

Finally, relying on statements made during oral argument in *Ward I*, Mr. Ward argues that, because a person can be charged with violating section 76-3-203.3 without first being convicted of a primary offense, section 76-3-203.3 may apply to a person who does not commit a primary offense. He argues that this renders section 76-3-203.3 facially overbroad. First, this argument is of little persuasive value because Mr. Ward's proposed interpretation of section 76-3-203.3 is inconsistent with the plain language of the statute. In any event, we reject this argument because it is presented for the first time on appeal. As we noted above, Mr. Ward filed his summary judgment motion in the District Court prior to our ruling in *Ward I*. On remand he merely renewed his motion without additional argumentation or factual support. If Mr. Ward wished to make this argument, he should have supplemented his summary judgment motion on remand. He did not; hence, we will not consider this contention. *Miller v. Pfizer, Inc.*, 356 F.3d 1326, 1336 (10th Cir. 2004).

We hold, therefore, that section 76-3-203.3 is not overbroad because when judged in relation to its plainly legitimate sweep it does not reach a substantial amount of constitutionally protected conduct. *See Broadrick*, 413 U.S. at 615.

B. Vagueness

Mr. Ward next asserts that section 76-3-203.3 is void for vagueness.

Because Mr. Ward's vagueness challenge comes in the procedural posture of a declaratory judgment with no pending criminal charges, we may find section 76-3-203.3 unconstitutionally vague only if it is impermissibly vague in all of its applications. *See Dodger's Bar & Grill, Inc. v. Johnson County Bd. of County Comm'rs*, 32 F.3d 1436, 1443 (10th Cir. 1994). Furthermore, the Supreme Court has cautioned that "speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid in the vast majority of its intended applications." *Hill v. Colorado*, 530 U.S. 703, 733 (2000) (internal quotation marks omitted).

The prohibitions of a criminal statute must be "set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest," *Dodger's Bar & Grill*, 32 F.3d at 1443 (citation omitted), and be written in a manner that does not encourage arbitrary and discriminatory enforcement, *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). As such, a "statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill*, 530 U.S. at 732. "Although the doctrine focuses both on

-19-

actual notice to citizens and arbitrary enforcement, . . . the more important aspect of vagueness doctrine is . . . the requirement that a legislature establish minimal guidelines to govern law enforcement." *Kolender*, 461 U.S. at 357–58. Thus, we consider whether in all applications section 76-3-203.3 lacks fair notice or sufficient law-enforcement guidance.

1.

Mr. Ward argues that section 76-3-203.3 fails to give fair notice for two reasons: (1) it does not enumerate a specific class of victims, and (2) it does not contain a scienter requirement. We address these in turn.

First, Mr. Ward contends that section 76-3-203.3 fails to offer fair notice because it is a hate-crime statute that lacks a specifically enumerated class of victims. As we determined above, the mere fact that section 76-3-203.3 has the term "hate crime" in its title does not affect our interpretation of the statute. *See Stephens*, 935 P.2d at 521–22. Despite Mr. Ward's assertion, section 76-3-203.3 is best construed as an "Exercise of Rights Statute." *J.W.*, 30 P.3d at 1232 n.1. More important, we fail to see how this makes the statute vague. The lack of enumerated victims appears to make the statute less vague: a person cannot commit an enumerated offense with the intent to threaten *anyone*. This absolute prohibition provides at least as much notice to citizens as a provision prohibiting threats directed at only certain groups of people. We therefore conclude that the

-20-

lack of enumerated classes of victims does not make the statute unconstitutionally vague.

Second, Mr. Ward argues that section 76-3-203.3 is vague because it lacks a scienter requirement. We disagree. First, Mr. Ward misinterprets the role of the scienter inquiry. The presence of a scienter inquiry can save an otherwise vague statute. "The Supreme Court has recognized that 'a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed.'" *Murphy v. Matheson*, 742 F.2d 564, 573 (10th Cir. 1984). In *Screws v. United States*, 325 U.S. 91, 101–02 (1945) (plurality), the Court held: "the requirement of a specific intent to do a prohibited act may avoid those consequences to the accused which may otherwise render a vague or indefinite statute invalid." *See also State v. Murphy*, 674 P.2d 1220, 1223 (Utah 1983) ("this scienter requirement also mitigates any vagueness in the law with respect to the inadequacy of notice to the dealer that his conduct is proscribed.") (notes omitted). Thus, when a statute might otherwise be vague, a scienter requirement mitigates the vagueness and makes the statute constitutional. But this does not imply, as Mr. Ward seems to argue, that any statute lacking a scienter requirement is necessarily vague. Because Mr. Ward has not convinced us that any part of the statute is otherwise vague, a scienter requirement is not necessary to make the statute constitutional.

Moreover, even if we were to consider any part of the statute vague, we conclude that section 76-3-203.3 requires specific intent and therefore is not vague. "In evaluating a facial challenge to a state law, a federal court must, of course, consider any limiting construction that a state court or enforcement agency has proffered." *Kolender*, 461 U.S. at 355. The Utah Court of Appeals, in constructing section 76-3-203.3, held that it requires the State to "prove that the defendant acted with the *specific intent* 'to cause a person to fear to freely exercise or enjoy any right.'" *J.W.*, 30 P.3d at 1235 (emphasis added). The Court of Appeals found that the statute's use of "with the intent to" in the context of this statute counseled for this construction. *See Green v. Turner*, 4 P.3d 789, 793 (Utah 2000) ("the inclusion or exclusion of a scienter requirement depends largely on the context and purposes of the statute or rule at issue."). Hence, the third element of section 76-3-203.3, as construed by the Utah courts, contains a specific intent requirement.

In addition, because the text of the statute requires that the defendant act "with the intent to intimidate or terrorize," which is defined as "an act which causes the person to fear for his physical safety or damages the property of that person or another ," following the *J.W.* court we conclude that this same "with the intent to" language requires the inclusion of a specific intent requirement in the second element of a section 76-3-203.3 prosecution. *See Green*, 4 P.3d at 793.

-22-

Hence, we hold that section 76-3-203.3's second element requires the State to make a showing that the defendant acted with the specific intent to make a person fear for his physical safety or to damage the property of that person or another . Because we conclude that the second and third elements of a section 76-3-203.3 prosecution require the State to prove specific intent, we hold that the statute provides fair notice to potential defendants. *See Murphy*, 742 F.2d at 573.

2.

The District Court also held that section 76-3-203.3 does not foster arbitrary and discriminatory enforcement. Following the Supreme Court's *Screws* opinion, the District Court held that because causing another to fear for his safety or damaging property is objectively verifiable, the statute does not invite arbitrary enforcement. Citing no authority, Mr. Ward argues that the District Court erred because "the focus of the statute is on the actor not the alleged victim. . . . [this] analysis is subjective and left to the arbitrary assessment of the charging law officer." We disagree.

It would be odd for specific intent, the very requirement that "may mitigate a law's vagueness . . . with respect to the adequacy of notice," *Murphy*, 742 F.2d at 573, to be the same requirement that renders a statute capable of arbitrary enforcement. If we followed Mr. Ward's reasoning, every statute found to give fair notice by way of a specific-intent requirement would necessarily be found

unconstitutionally vague for fostering arbitrary enforcement. Such a result is absurd. *See Screws*, 325 U.S. at 103 (holding that "a requirement of a specific intent to deprive a person of a federal right made definite by decision or other rule of law saves the Act from any charge of unconstitutionality on the grounds of vagueness."). Specific intent is an objectively verifiable requirement with a long history in American jurisprudence. *See, e.g.*, *Apprendi v. New Jersey*, 530 U.S. 466, 492 n.17 (2000). Therefore, we do not conclude that section 76-3-203.3 fosters arbitrary enforcement.

3.

Finally, we consider Mr. Ward's two additional arguments that assert vagueness in general. First, just as in his overbreadth analysis, Mr. Ward argues that statements made by defense counsel in oral argument during *Ward I* render section 76-3-203.3 void for vagueness. Because this argument is raised for the first time on appeal, we reject it. *Miller*, 356 F.3d at 1336.

Second, Mr. Ward asserts, without authority, that section 76-3-203.3 is vague because it "has not fared well in previous enforcement attempts." Mr. Ward points out that the Utah Court of Appeals reversed a conviction under section 76-3-203.3 on insufficiency of the evidence grounds. *See J.W.*, 30 P.3d at 1235–36. He also directs our attention to a Utah trial court that, in dismissing a charge brought under section 76-3-203.3, found that the statute does not list

-24-

homosexuals as a specially protected class under the statute. *See State v. Millard*, No. 99-190-9956 (Salt Lake County Ct. 1999).

Mr. Ward contends that these decisions illustrate the statute's vagueness. We fail to see the connection between these decisions and a claim of vagueness. To the contrary, both courts found section 76-3-203.3 unambiguous and that the State failed to satisfy the requirements of the statute. Therefore, we do not find that these rulings demonstrate that section 76-3-203.3 is vague.

C.      Time, Place, Manner

In his last argument, Mr. Ward contends that section 76-3-203.3 is not a permissible time, place, or manner restriction. Mr. Ward considers each of the four factors of the time, place, or manner test—as stated in *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)—and argues that section 76-3-203.3 fails each factor. We reject this argument because we conclude that the First Amendment's time, place, or manner doctrine is not applicable to this case.

We apply the time, place, and manner doctrine to evaluate whether restrictions placed on expression in public fora violate the First Amendment. *See First Unitarian Church*, 308 F.3d at 1132 (noting that, "[a]s with any public forum, the City may enact reasonable time, place, and manner restrictions"); *Wells v. City and County of Denver*, 257 F.3d 1132, 1147 (10th Cir. 2001) ("A

-25-

content-neutral restriction in a traditional or designated public forum is subject to review as a regulation on the time, place, and manner of speech."). This doctrine allows the government to place restrictions on expression so long as it "do[es] not regulate *what* is said, but merely [regulates] such matters as *when*, *where*, and *how loud*." Rodney A. Smolla, 1 *Smolla & Nimmer on Freedom of Speech* § 8.36 (2004).

We have previously given examples of time, place, or manner restrictions, including "requiring that street demonstrations occur at times other than rush hour, that billboards be located away from scenic highways, or that sound trucks not exceed a certain decibel level." *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1192 (10th Cir. 2003). In *Heideman*, we further noted that time, place, and manner restrictions are conceptually different from "generally applicable regulations of both non-expressive and expressive conduct." *Id*. at 1193.

Section 76-3-203.3 is aimed at conduct; it does not impose a time, place, or manner restriction on expression. Although we recognize that a clear line cannot always be drawn between statutes regulating speech and statutes regulating conduct, we have previously noted that statutes regulating conduct are not properly analyzed under the time, place, or manner doctrine. *Heideman*, 348 F.3d at 1192–93. Because section 76-3-203.3 applies to both expressive and non-expressive conduct, and is not a restriction on the methods in which one may

-26-

express his views, the time, place, or manner doctrine is not applicable.

## V. CONCLUSION

While Mr. Ward remains at liberty to advocate vigorously through lawful protests for the abolishment of the fur trade, we hold that section 76-3-203.3 is not facially unconstitutional or vague.  For the foregoing reasons, we AFFIRM.