NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ROBERT S. CARLBORG,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2024-1339

---

Appeal from the United States Court of Federal Claims in No. 1:21-cv-01994-AOB, Judge Armando O. Bonilla.

---

Decided: November 4, 2024

---

ROBERT S. CARLBORG, San Luis Rey, CA, pro se.

STEPHEN J. SMITH, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee. Also represented by BRIAN M. BOYNTON, STEVEN JOHN GILLINGHAM, PATRICIA M. MCCARTHY.

---

Before MOORE, *Chief Judge*, CHEN and STOLL, *Circuit Judges*.

Per Curiam.

Robert S. Carlborg appeals from a decision of the United States Court of Federal Claims (Claims Court), which granted the government's motion for judgment on the administrative record (MJAR) and denied Mr. Carlborg's. *Carlborg v. United States*, 168 Fed. Cl. 371 (2023) (*Decision*). For the reasons discussed below, we *affirm*.

## BACKGROUND

Mr. Carlborg served in the United States Marine Corps (USMC) from 1995 through 2015, rising to the rank of Major. *Decision* at 374. On December 9, 2014, Mr. Carlborg's command charged him for violations of Article 133 (conduct unbecoming of an officer and a gentleman) and Article 134 (adultery) of the Uniform Code of Military Justice (UCMJ). *Id.*

In lieu of a court-martial, Mr. Carlborg elected to submit a pretrial agreement (PTA), offering to accept non-judicial punishment (NJP).[1] J.A. 41.[2] The PTA was accepted by the Convening Authority, who agreed to dismiss the charges with prejudice upon sentencing at NJP. *Id.* At a February 5, 2015, NJP hearing, Mr. Carlborg

---

[1] NJP, as provided in Article 15 of the UCMJ, is a form of military justice to address offenses committed by service members. *Dumas v. United States*, 620 F.2d 247, 250–53 (Ct. Cl. 1980). The NJP process is the least formal option and is conducted by the accused's commanding general. *Id.* at 251. The proceeding is not criminal in nature, as opposed to court-martial, and limited punishments may be imposed. *Id.* at 251–52. An accused service member has the right to elect to proceed with an NJP instead of with a formal court-martial. *Id.* at 251; *see also* 10 U.S.C. § 815.

[2] "J.A." refers to the appendix filed by Mr. Carlborg. *See* ECF No. 30.

pleaded guilty to all charges. *Decision* at 375. As punishment, Mr. Carlborg received a punitive letter of reprimand and forfeited $7,430.10 of pay. *Id.*

Two weeks later, the Commanding General prepared an NJP report recommending that Mr. Carlborg be required to show cause for retention in the USMC at a Board of Inquiry (BOI) based on Mr. Carlborg's admitted misconduct. *Id.* In response, Mr. Carlborg stated that he planned to request voluntary early retirement under the Temporary Early Retirement Authority (TERA) program rather than face the BOI. *Id.* at 376.

On March 12, 2015, Mr. Carlborg was served with a formal notice of a BOI ordering him to show cause for retention. *Id.* That same day, Mr. Carlborg submitted his early retirement request under TERA. *Id.*

In May 2015, the BOI convened and substantiated the underlying misconduct. *Id.* The BOI recommended that Mr. Carlborg be separated with an Other Than Honorable characterization of service. *Id.* In July 2015, Mr. Carlborg challenged the BOI's findings on the grounds that he qualified for early retirement and that the BOI proceedings should have been paused during the processing of his March 12, 2015, voluntary retirement request. *Id.* Mr. Carlborg also alleged legal errors in his BOI proceeding, contended that his post-traumatic stress disorder (PTSD) was a mitigating factor, and requested an honorable discharge. *Id.*

In September 2015, the Deputy Commandant rejected Mr. Carlborg's legal arguments and recommended that he be discharged with an Other Than Honorable characterization of service. *Id.* Mr. Carlborg was subsequently ordered to be evaluated by a medical professional to determine whether PTSD contributed to his misconduct. *Id.* After reviewing Mr. Carlborg's records and interviewing him, a Division Psychiatrist concluded that Mr. Carlborg was not suffering from PTSD. *Id.* The

Assistant Secretary of the Navy then approved the Deputy Commandant's recommendation, and on October 9, 2015, Mr. Carlborg was discharged with an Other Than Honorable characterization of service. *Id.*

The next year, in October 2016, Mr. Carlborg filed a disability claim with the Department of Veterans Affairs (VA) for service-connected PTSD and in May 2017, the VA assigned him a 70 percent disability rating. *Id.* at 376–77.

In October 2018, Mr. Carlborg petitioned the Board for Correction of Naval Records (BCNR) for relief, raising a variety of arguments. *Id.* at 377. In April 2020, the BCNR recommended that certain negative comments be removed from Mr. Carlborg's fitness report, but denied all other relief. *Id.*

On October 8, 2021, Mr. Carlborg filed a complaint "for back-pay and collateral injunctive relief" in the Claims Court. Complaint at 1, *Carlborg v. United States*, No. 21-1994C (Fed. Cl. Oct. 8, 2021), ECF No. 1. Mr. Carlborg and the government eventually filed cross-MJARs. On November 6, 2023, the Claims Court denied Mr. Carlborg's MJAR and granted the government's. In its decision, the Claims Court rejected Mr. Carlborg's arguments that: the USMC violated the terms of the PTA by using his charged conduct as the basis of his separation; he should have been referred to the Disability Evaluation System (DES); the USMC violated applicable rules and regulations; and his proceedings were prejudiced by unlawful command influence. *Decision* at 377–85.

Mr. Carlborg timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

"We review a decision of the Court of Federal Claims granting or denying a motion for judgment on the administrative record without deference. That is, we reapply the statutory review standards." *Chambers v.*

*United States*, 417 F.3d 1218, 1227 (Fed. Cir. 2005) (citation omitted). Under that standard, we will not disturb the decision of the BCNR "unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Id.*

On appeal, Mr. Carlborg raises the same arguments he made before the Claims Court. We reject each one.

First, Mr. Carlborg argues that the USMC violated the terms of the PTA by failing to dismiss his charges with prejudice. The PTA called for the USMC to initially withdraw Mr. Carlborg's charges from court-martial without prejudice and then for the withdrawal to be converted into a dismissal with prejudice after sentencing at the NJP. J.A. 44. The former step occurred but the latter did not.

The BCNR's conclusion that, despite his charges not being formally dismissed with prejudice, Mr. Carlborg received his benefit of the PTA—the withdrawal of his charges from the court-martial, is in accordance with law. J.A. 172. We agree that "Mr. Carlborg avoided a criminal prosecution and the prospect of a federal criminal conviction, dismissal (i.e., the officer equivalent of a dishonorable discharge), and possible confinement." *Decision* at 378; J.A. 172. Instead of facing a criminal prosecution, Mr. Carlborg pleaded guilty at the NJP hearing and received a punitive letter of reprimand and reduced pay. *Decision* at 375. As the Claims Court explained, the USMC "effectively dismissed *with prejudice* the charges preferred against Mr. Carlborg in that he was not—and now cannot be—prosecuted under Articles 134 and 135 of the UCMJ." *Id.* at 379.

Relatedly, Mr. Carlborg contends that the USMC improperly used the dismissed court-martial charges as the basis for the BOI that led to his separation. The BCNR's conclusion that the preclusive effect of the PTA does not extend to the convening of a BOI and Mr.

Carlborg's related administrative discharge is in accordance with law. J.A. 172; *Decision* at 378. The Commanding General was required to file an NJP report including a recommendation of whether Mr. Carlborg's conduct warrants separation. *See Decision* at 375 n.8; *see also* Marine Corps Order (MCO) P5800.16A ¶ 4004. Furthermore, Department of Defense Instruction (DoDI) 1332.30 provides, among other things, that "military *nonjudicial punishment* in accordance with Article 15, Uniform Code of Military Justice *do[es] not preclude an administrative discharge action*." DoDI 1332.30, Encl. 3, ¶ 6(d) (Nov. 25, 2013) (emphases added). In other words, the resolution of criminal charges does not bar the USMC from administratively discharging someone based on the underlying conduct. The BCNR did not err in concluding the same. *See* J.A. 172.

Second, Mr. Carlborg argues that the USMC should have referred him to the DES as a matter of law. The "DES is the mechanism for determining a service member's return to duty, separation, or retirement following a disability diagnosis." *Decision* at 379. In essence, qualified medical authorities refer eligible service members to the DES to be evaluated for permanent unfitness for duty. *Id.* at 379–80.

The Claims Court, crediting the BCNR's analysis, determined that Mr. Carlborg failed to establish that he was unfit for continued service due to PTSD or any other disability. *Id.* at 379–81. We agree. The Claims Court explained that the BCNR's decision was supported by Mr. Carlborg's adequate performance up until allegations of his misconduct and by "overwhelming" medical evidence demonstrating his fitness for duty. *Id.* at 380. For example, in March 2015, Mr. Carlborg represented to a clinician that he was completing his work competently. *Id.* Additionally, the Senior Medical Advisor who reviewed Mr. Carlborg's BCNR application concurred that the evidence did not support referral to the DES. J.A. 46–48.

For his part, Mr. Carlborg primarily relies on a February 20, 2015, note from his Unit Medical Officer that he was "[n]ot currently considered psychiologically [sic] fit for duty." J.A. 71. Both the Claims Court and the BCNR considered this evidence and found it unpersuasive. *Decision* at 380; J.A. 169–70. For example, the statement was made the day after Mr. Carlborg received the NJP report, stood in contrast to evaluations made at the time of his discharge, and indicated that Mr. Carlborg was not currently fit rather than permanently unfit. *Decision* at 380; J.A. 169–70. Accordingly, we agree with the Claims Court that substantial evidence supports the BCNR's finding that Mr. Carlborg was not required to have been referred to the DES.

Third, Mr. Carlborg argues that the USMC violated various rules and regulations. Specifically, Mr. Carlborg claims the USMC: denied his request for a 20-day extension to respond to the BOI report; failed to conduct a separation medical evaluation; and failed to forward his retirement request to the Secretary of the Navy. We address each alleged violation in turn.

Regarding the 20-day extension, Mr. Carlborg contends that the request should have been forwarded to the Alternate Show Cause Authority in accordance with regulation. We see no error in the BCNR's determination otherwise. The BCNR explained the extension was properly considered by the Staff Judge Advocate (SJA) "who was, in fact, an alternative show cause authority." J.A. 178; *Decision* at 381–82. The Claims Court recognized that it is "common practice" for the SJA to act on "non-substantive requests," such as extensions of time. *Id.* at 382 (citing *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1338 (Fed. Cir. 2001)). Additionally, the BCNR and Claims Court explained that Mr. Carlborg was not entitled by right to a 20-day extension. J.A. 178; *Decision* at 382 (noting that a party "*may submit* an extension request to the Alternate Show

Cause Authority or Show Cause Authority who directed the BOI" (emphasis added) (citation omitted)).

The next alleged violation, that the USMC failed to properly conduct a medical examination upon separation as required under 10 U.S.C. § 1177, is also unpersuasive. The record evidence indicates that Mr. Carlborg received a PTSD evaluation in conjunction with his separation from the USMC. J.A. 174–75; J.A. 90–95. Further, substantial evidence supports the BCNR's finding that, contrary to Mr. Carlborg's assertion, the chain of command was aware of Mr. Carlborg's medical conditions, and specifically directed that he receive an evaluation to determine whether PTSD contributed to his misconduct. J.A. 174–77; *Decision* at 382; *see also, e.g.*, J.A. 78; J.A. 81–83.

Next, Mr. Carlborg contends that the USMC violated 10 U.S.C. § 1186(a) and Secretary of the Navy Instruction (SECNAVINST) 1920.6C by failing to forward his March 12, 2015, retirement request to the Secretary of Navy. The Claims Court considered and rejected this argument because "he was not eligible for voluntary early retirement." *Decision* at 383–84; *see* 10 U.S.C. § 1186(a)(1) (The Secretary may grant a request "for voluntary retirement, *if the officer is qualified for retirement*") (emphasis added). We agree. Mr. Carlborg sought retirement under TERA. But "officers pending legal action or proceedings, administrative separation, or disability separation or retirement are not eligible for TERA." MARADMIN 155/14, ¶ 2(H) (Mar. 28, 2014); J.A. 173. Mr. Carlborg was therefore not eligible for TERA because he was subject to both legal and administrative separation proceedings at the time he requested retirement. J.A. 173; *Decision* at 383–84.

For these reasons, we agree with the Claims Court that the BCNR did not err in determining that the USMC did not violate the rules and regulations raised by Mr. Carlborg. *Id.* at 381–84.

Fourth, Mr. Carlborg argues that his proceedings were prejudiced by unlawful command influence. As the Claims Court correctly determined, this argument is forfeited because Mr. Carlborg failed to raise it before the BCNR. *Decision* at 384 ("Unlawful command influence cannot be raised for the first time in [the Claims Court]." (quoting *Pittman v. United States*, 135 Fed. Cl. 507, 528 (2017), *aff'd*, 753 F. App'x 904 (Fed. Cir. 2019) (per curiam))).

Finally, Mr. Carlborg argues that the Claims Court violated his due process rights by *sua sponte* vacating the briefing schedule and issuing its decision without providing him notice and an opportunity to respond. The relevant timeline is as follows. Mr. Carlborg filed his complaint with the Claims Court in October 2021. J.A. 20. After a remand to the BCNR, a five-month stay to allow Mr. Carlborg to substitute counsel, and three extensions to the briefing schedule, Mr. Carlborg filed his MJAR in August 2023. *Id.* at 21–24. The government filed its consolidated response and cross-MJAR in September 2023. *Id.* at 24. Then, without waiting for Mr. Carlborg's consolidated response and reply, the Claims Court issued an opinion and order denying his MJAR, granting the government's, and vacating the remaining briefing schedule. *Id.*; *see also Decision* at 374 n.1 ("Additional briefing and oral argument are unnecessary.").

Generally, a court cannot enter a case-dispositive judgment "without notifying the parties of its intentions and allowing them an opportunity to . . . respond." *English v. Cowell*, 10 F.3d 434, 437 (7th Cir. 1993). For example, district courts are permitted to enter summary judgment *sua sponte*, but this power is tempered by the requirement to first provide "notice and a reasonable time to respond." Fed. R. Civ. P. 56(f).

Although the Claims Court appears to have run afoul of this procedural safeguard, that failure is not necessarily a reversible error requiring remand. Other circuits have

recognized that if "the appellant cannot demonstrate [procedural] prejudice—by establishing that it was unable to present evidence in support of its position as a result of the unfair surprise—the failure to provide notice is harmless error and a remand would be futile." *P.R. Elec. Power Auth. v. Action Refund*, 515 F.3d 57, 65–66 (1st Cir. 2008) (finding harmless error where appellant alleged a due process violation from the district court's failure to provide notice and an opportunity to present evidence), *abrogated on other grounds by Portugues-Santana v. Rekomdiv Int'l*, 657 F.3d 56, 60–61 (1st Cir. 2011); *see also Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 28 F.3d 1388, 1398 (5th Cir. 1994) ("When there is no notice to the nonmovant, summary judgment will be considered harmless *if the nonmovant has no additional evidence* or if all of the nonmovant's additional evidence is reviewed by the appellate court and none of the evidence presents a genuine issue of material fact." (citation omitted)); *Restigouche, Inc. v. Town of Jupiter*, 59 F.3d 1208, 1213 (11th Cir. 1995); *Ward v. Utah*, 398 F.3d 1239, 1245–46 (10th Cir. 2005); *Bridgeway Corp. v. Citibank*, 201 F.3d 134, 139–40 (2d Cir. 2000).

In this case, Mr. Carlborg fails to make any claim of prejudice. He does not identify any argument or fact that he would have raised that was not already present in his opening brief. Nor does he suggest that the government's motion raised any argument that he had not addressed in his earlier filing. It is telling, too, that Mr. Carlborg's arguments on appeal are substantially identical to those accompanying his MJAR, despite now asserting that the Claims Court erroneously granted the government's motion. Just like the appellant in *Restigouche*, Mr. Carlborg "has now had ample opportunity to marshal facts and arguments, and does not assert on appeal that there exists additional evidence, beyond the record . . . which would have precluded [judgment on the administrative record] in this case." *Restigouche*, 59 F.3d

at 1213. Under these circumstances, we find Mr. Carlborg's argument unpersuasive. *See Tex. Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*, 895 F.3d 1304, 1316 (Fed. Cir. 2018) (explaining that "unless prejudice is clear even without any explanation, the party seeking reversal normally must explain why the erroneous ruling caused harm" (cleaned up)).

## CONCLUSION

We have considered Mr. Carlborg's remaining arguments and find them unpersuasive. For the foregoing reasons, we *affirm*.

## **AFFIRMED**

### Costs

No costs.