**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

BUSHCO, a Utah corporation;
COMPANIONS, L.L.C.; and TT II, INC.,

      Plaintiffs - Appellants/Cross -
      Appellees,

v.

MARK SHURTLEFF, Attorney General
of the State of Utah,

      Defendant - Appellee/Cross -
      Appellant,

and

CHRIS BURBANK, Salt Lake City Chief
of Police,

      Defendant.

Nos. 12-4083 & 12-4093

---

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:11-CV-00416-DB)**

---

W. Andrew McCullough, W. Andrew McCullough, L.L.C., Midvale, Utah, for Plaintiffs-
Appellants.

Thom D. Roberts, Assistant Utah Attorney General (Mark L. Shurtleff, Attorney General,
with him on the brief), Salt Lake City, Utah, for Defendant-Appellee.

---

Before **LUCERO, EBEL,** and **HOLMES,** Circuit Judges.

**EBEL**, Circuit Judge.

## INTRODUCTION

Plaintiffs-Appellants—Bushco Corp; Companions, L.L.C.; and TT II, Inc.

("Appellants")—are escort services licensed as sexually oriented businesses. Defendant-

Appellee is the Attorney General of the State of Utah ("Attorney General").[1] Appellants

brought a lawsuit in federal district court for the district of Utah, seeking declaratory and

injunctive relief. They claimed that certain amendments ("Amendments") to Utah Code

Ann. § 76-10-1313 ("Sexual Solicitation Statute" or "Statute")—specifically,

§ 1313(1)(c) and § 1313(2)—were overly broad, were unconstitutionally vague, and

infringed on the right of free speech under the First Amendment of the U.S. Constitution.

The parties filed cross-motions for summary judgment.

The district court held that § 1313(2) was unconstitutionally vague, and therefore

ordered that that provision be severed and stricken from the statute. But the court upheld

§ 1313(1)(c). Appellants appealed the court's ruling that § 1313(1)(c) is constitutional,

and the Attorney General filed a cross-appeal, challenging the court's ruling that

§ 1313(2) is unconstitutionally vague.

---

[1] During the proceedings before the district court, Appellants impleaded the Chief of
Police of Salt Lake City. But the district court ruled that he was not a necessary party to
the action and dismissed him from the case without prejudice. Appellants have not
appealed that dismissal.

On appeal before this court are three main issues: (1) whether issue preclusion applies to the question of the Statute's constitutionality because a district court previously held unconstitutional similar language of a predecessor statute, Utah Code Ann. § 76-10-1301(1) (Supp. 1987) ("Predecessor Sexual Activity Statute"); (2) whether the Amendments to the Sexual Solicitation Statute are overbroad or place too great a burden on expression protected by the First Amendment; and (3) whether the Amendments to the Sexual Solicitation Statute are unconstitutionally vague.[2]

This opinion reaches the following conclusions: (1) Issue preclusion does not apply, because the Predecessor Sexual Activity Statute and the Sexual Solicitation Statute are different statutes, with different purposes, and the constitutionality of the Sexual Solicitation Statute at issue in this case was not previously litigated. (2) The Amendments are not unconstitutionally overbroad because they do not encompass a substantial amount of constitutionally protected conduct. Moreover, the Amendments do not place too great a burden on Appellants' speech rights because they pass the O'Brien test for incidental restrictions on First Amendment rights. (3) Section 1313(1)(c) is not unconstitutionally vague, because it provides fair notice of the prohibited conduct and sufficient guidance to law enforcement. Similarly, § 1313(2) is not unconstitutionally

_____

[2] In the beginning of their opening brief, Appellants allude to some other arguments. But we only consider those arguments that Appellants fully develop in their briefs. See, e.g., Murrell v. Shalala, 43 F.3d 1388, 1390 n.2 (10th Cir. 1994) ("[P]erfunctory complaints [that] fail to frame and develop an issue [are not] sufficient to invoke appellate review.").

3

vague, because it does not authorize or encourage discriminatory enforcement of the Sexual Solicitation Statute.

Accordingly, we affirm the district court's ruling as to the constitutionality of § 1313(1)(c), but reverse the district court's ruling that § 1313(2) is unconstitutionally vague.

## BACKGROUND

### A. The Sexual Solicitation Statute

In March 2011, the Utah legislature passed House Bill 121, entitled "Sex Solicitation Amendments," which the governor signed into law, effective May 10, 2011. 2011 Utah Laws Ch. 32 (codified as amended at Utah Code Ann. § 76-10-1313). As is relevant to this appeal, House Bill 121 amended Utah Code Ann. § 76-10-1313 by adding two new provisions: § 1313(1)(c) and § 1313(2). These provisions read as follows:

1. A person is guilty of sexual solicitation when the person:
   . . . .
   c. with intent to engage in sexual activity for a fee or to pay another person to commit any sexual activity for a fee engages in, offers or agrees to engage in, or requests or directs another to engage in any of the following acts:
      i. exposure of a person's genitals, the buttocks, the anus, the pubic area, or the female breast below the top of the areola;
      ii. masturbation;
      iii. touching of a person's genitals, the buttocks, the anus, the pubic area, or the female breast; or
      iv. any act of lewdness.
2. An intent to engage in sexual activity for a fee may be inferred from a person's engaging in, offering or agreeing to engage in, or requesting or directing another to engage in any of the acts described in Subsection (1)(c) under the totality of the existing circumstances.

4

Utah Code Ann. § 76-10-1313(1)-(2).[3]  And as referenced in the Sexual Solicitation

Statute, the Utah Code defines "[s]exual activity" to mean "acts of masturbation, sexual

intercourse, or any sexual act involving the genitals of one person and the mouth or anus

of another person, regardless of the sex of either participant."  Id. § 76-10-1301(5).  Thus,

the Sexual Solicitation Statute forbids a person from engaging in or directing another to

perform the acts of touching and exposure listed in the statute with the intent to, for a fee,

engage in masturbation, sexual intercourse, or a sexual act involving the genitals of one

person and the mouth or anus of another.  Id. § 76-10-1313(1)(c); § 76-10-1301(5).

The Attorney General asserts that the Amendments are necessary because

prostitutes may ask undercover police officers to engage in conduct listed in § 1313(1)(c)

as a means of identifying police officers by their refusal to engage in such conduct.

Indeed, the Chief of the Salt Lake City Police Department testified before the Utah

legislature that the Amendments quoted above are necessary to prevent Utah's

prostitution laws from being circumvented.

### B.  The Lawsuit

Appellants are escort services licensed as sexually oriented businesses.  These

businesses employ or contract with licensed escorts who provide companionship or adult

---

[3] In 2013, the Utah legislature amended Utah Code Ann. § 76-10-1313 by adding a new subsection that relates to the penalty for sexual solicitation of a child.  2013 Utah Laws Ch. 196 (codified as amended at Utah Code Ann. § 76-10-1313(4)).  The new legislation does not affect our analysis in this appeal.

entertainment to patrons. Appellants filed a lawsuit against the Attorney General, arguing that the Amendments to the Sexual Solicitation Statute were unconstitutional.

The parties filed cross-motions for summary judgment, and the court granted in part and denied in part the motions. Specifically, the district court rejected Appellants' argument that § 1313(1)(c) is unconstitutional, but ruled that § 1313(2) is impermissibly vague, and therefore struck that provision from the Statute. The parties have filed cross-appeals; Appellants argue that the district court erred in upholding § 1313(1)(c), and the Attorney General argues that the district court erred in striking down § 1313(2).

## JURISDICTION

The district court had jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 28 U.S.C. § 2201.

Federal Rule of Civil Procedure 58 specifies that, with a few exceptions that do not apply to this case, "[e]very judgment . . . must be set out in a separate document," and that the clerk will enter judgment. When the Notice of Appeal was initially filed, the district court clerk had not entered judgment on this action in a separate document following the docketing of the district court's memorandum decision. Accordingly, we directed the parties to brief the question of this Court's jurisdiction.

In response, Appellants filed a request for entry of judgment with the district court, and the deputy clerk entered a "clerk's judgment" in this matter.[4] We therefore

---

[4] The relevant docket entry is labeled "clerk's judgment," and it is a document signed by the deputy clerk, which states:

6

consider the previously filed Notices of Appeal by the Appellants and Attorney General to be timely, Fed. R. App. P. 4(a)(2) ("A notice of appeal filed after the court announces a decision or order—but before the entry of the judgment or order—is treated as filed on the date of and after the entry."), and hold that we have jurisdiction over the case as an appeal from a final decision of the district court, 28 U.S.C. § 1291.

## STANDARD OF REVIEW

"A motion for summary judgment should be granted 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" Thomson v. Salt Lake Cnty., 584 F.3d 1304, 1312 (10th Cir. 2009) (quoting Fed. R. Civ. P. 56(c)). This court will "review the district court's grant of summary judgment de novo, employing the same legal standard applicable in the district

---

> IT IS SO ORDERED AND ADJUDGED
> that judgment be entered as follows:
> that Utah Code § 76-10-1313(2) is unconstitutionally vague and is severed
> and stricken from Utah Code § 76-10-1313.

We note that this "clerk's judgment" does not mention the aspect of the district court's memorandum decision from which Appellants appeal—the court's ruling that § 1313(1)(c) is constitutional. And the parties do not address this in their briefs. But in any event, Federal Rule of Appellate Procedure 4(a)(7)(A)(ii) provides that a judgment is entered for Rule 4 purposes from the earlier of (1) it being set forth on a separate document or (2) 150 days running from the entry of the judgment or order in the civil docket. Here, the district court's memorandum decision is a final order, in that it disposed of all the litigation between the parties, and it was entered on April 18, 2012, so even without a separate document, a judgment would be deemed entered 150 days later— September 15, 2012. And under Federal Rule of Appellate Procedure 4(a)(2), because the parties filed their Notices of Appeal before that time, they would be deemed filed on that date.

7

court." Id. at 1311. In so doing, this court "afford[s] no deference to the district court's interpretation of state law." Id. at 1312 (internal quotation marks omitted). In this case, there does not appear to be any dispute of material fact. Thus, the question on appeal is whether summary judgment was appropriate as a matter of law.

## DISCUSSION

### I.     Whether Issue Preclusion Bars Consideration of This Appeal

In the case before the Court in this appeal, Appellants claim that issue preclusion applies because the language in the Sexual Solicitation Statute is similar to the language in the Predecessor Sexual Activity Statute, Utah Code Ann. § 76-10-1301(1) (Supp. 1987), which, in Guinther v. Wilkinson, the federal district court previously held to be unconstitutional.[5] 679 F. Supp. 1066, 1068 (D. Utah 1988). Indeed, Appellants argue that the Sexual Solicitation Statute is essentially a reenactment of the Predecessor Sexual Activity Statute invalidated by Guinther. But the Attorney General claims that issue preclusion does not apply, because the Sexual Solicitation Statute is "not only a different statute" from the Predecessor Statute, "but is [also] different in wording, effect, and in what it prohibits." Aple. Br. at 8. In considering this issue, the district court in this case concluded that the issue in the Guinther litigation "is not sufficiently similar to trigger res judicata or collateral estoppel." Aplt. App. at 194. We agree.

We will first provide background information about the Predecessor Sexual Activity Statute and the Guinther decision, which held language in that statute

_____

[5] The Attorney General did not appeal the Guinther decision.

8

unconstitutional.  We will then discuss whether issue preclusion applies in this case.

## A.  The Predecessor Statute and the Guinther Decision

In 1987, the Utah legislature passed a statute that defined "sexual activity" for

purposes of the part of the Utah Code dealing with prostitution.  This statute read as

follows:

> "Sexual activity" means acts of masturbation, sexual intercourse, or any touching of a person's clothed or unclothed genitals, pubic area, buttocks, anus, or, if the person is a female, her breast, whether alone or between members of the same or opposite sex, or between humans and animals, in an act of apparent or actual sexual stimulation or gratification.

Utah Code Ann. § 76-10-1301(1) (Supp. 1987).  This definition of sexual activity applied

to a then-existing section of the Utah Code, id. § 76-10-1302 ("Prostitution Statute"),

which in pertinent part provided:

> (1) a person is guilty of prostitution when:
>
>> (a) He engages or offers or agrees to engage in any sexual activity with another person for a fee . . . .

Id. § 76-10-1302(1)(a) (emphasis added).

The Predecessor Sexual Activity Statute was challenged by a group of plaintiffs

that included, among others, some adult entertainers.  Guinther, 679 F. Supp. at 1068.

The federal district court for the District of Utah held that the following emphasized

language was unconstitutionally overbroad and vague:

> "Sexual activity" means acts of masturbation, sexual intercourse, or <u>any</u> <u>touching of a person's clothed or unclothed genitals, pubic area, buttocks,</u> <u>anus, or, if the person is a female, her breast, whether alone or between</u> <u>members of the same or opposite sex, or between humans and animals, in</u>

9

an act of apparent or actual sexual stimulation or gratification.

Utah Code Ann. § 76-10-1301(1) (Supp. 1987) (emphasis added); Guinther, 679 F. Supp.
at 1069–70.

Specifically, the court concluded that the emphasized language was overbroad
because although "the statute embraces conduct that very well justifiably may be
regulated under the police power of the state, . . . it is so broad as also to embrace conduct
which could not justifiably be so regulated." Guinther, 679 F. Supp. at 1070. Moreover,
the court held that the language was unconstitutionally vague because "[t]here is no
definition or standard set forth in the statute concerning the meaning of the term
'apparent or actual sexual stimulation or gratification,'" id. (quoting Utah Code Ann.
§ 76-10-1301(1)), and "[t]he enactment at issue provides no standards against which a
person's conduct may be measured and is susceptible to mischievous subjective
application," id. at 1071. Accordingly, the court ordered the emphasized language
stricken and severed from the statute. Id. at 1069–71.

### B. Whether Issue Preclusion Applies in This Case

"[I]ssue preclusion bars a party from relitigating an issue once it has suffered an
adverse determination on the issue, even if the issue arises when the party is pursuing or
defending against a different claim." Park Lake Res. Ltd. Liab. v. U.S. Dep't Of Agr.,
378 F.3d 1132, 1136 (10th Cir. 2004); accord United States v. Mendoza, 464 U.S. 154,
158 (1984) ("Under the judicially-developed doctrine of collateral estoppel, once a court
has decided an issue of fact or law necessary to its judgment, that decision is conclusive

10

in a subsequent suit based on a different cause of action involving a party to the prior litigation.").  Issue preclusion applies when:

> (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

Park Lake Res. Ltd. Liab., 378 F.3d at 1136.  Because we conclude that the issue previously decided is not identical with the one presented in this action, we only consider the first factor.

The issue previously decided is not identical with the one presented in this action. The Sexual Solicitation Statute is a different statute than the Predecessor Sexual Activity Statute at issue in Guinther.  Indeed, the statutes were put into place by separate legislative enactments, and they serve distinct purposes.  The Predecessor Sexual Activity Statute gave the definition of "sexual activity" that applied to the part of the Utah Code dealing with prostitution.  Utah Code Ann. § 76-10-1301(1) (Supp. 1987).  Unlike the Predecessor Sexual Activity Statute, the Sexual Solicitation Statute does <u>not</u> give the definition of "sexual activity."  <u>See</u> Utah Code Ann. § 76-10-1313.  The current statutory definition of "sexual activity" is contained in Utah Code Ann. § 76-10-1301, and is not challenged in this appeal.

Moreover, the Predecessor Sexual Activity Statute and the Sexual Solicitation Statute are different in their effect.  Unlike the Predecessor Sexual Activity Statute, the Sexual Solicitation Statute does not criminalize merely participating in, for a fee, the

11

prohibited exposure or touching.  Instead, it criminalizes participating in the enumerated exposure or touching with the specific intent to participate in, for a fee, masturbation, sexual intercourse, or any sex act involving the genitals of one person and the mouth or anus of another.  Id. § 76-10-1313(1)(c); § 76-10-1301(4).  Thus, the Predecessor Sexual Activity Statute serves to criminalize conduct that is not criminalized by the Sexual Solicitation Statute.[6]

## II.    Whether the Challenged Provisions of the Sexual Solicitation Statute Are Unconstitutional

"Facial challenges are strong medicine."  Ward v. Utah, 398 F.3d 1239, 1246-47 (10th Cir. 2005).  Accordingly, "facial challenges are best when infrequent."  Id. (internal quotation marks omitted).  Moreover, "[b]ecause facial challenges push the judiciary towards the edge of its traditional purview and expertise, courts must be vigilant in applying a most exacting analysis to such claims."  Id. at 1247.

With this principle in mind, this opinion will consider (A) whether the Amendments to the Sexual Solicitation Statute are overbroad or violate the First Amendment; and (B) whether the Amendments are unconstitutionally vague.  For the reasons discussed below, we reject Appellants' challenges.

---

[6] For instance, on its face, the Predecessor Sexual Activity Statute would criminalize a dancer—a ballet dancer, for example—touching the pubic area of another dancer as part of a dance move during a paid performance.  But the dancer's conduct would not be criminal under the Sexual Solicitation Statute, because it was not done with the intent to engage in sexual activity for a fee.

**A. Whether the Amendments to the Sexual Solicitation Statute Are Overbroad or Place Too Great a Burden on Expression Protected by the First Amendment**

Appellants argue that the Amendments to the Sexual Solicitation Statute are overbroad and infringe on expression protected by the First Amendment. The district court rejected the argument that § 1313(1)(c) was overbroad and held that the provision "does not infringe on a substantial amount of protected speech." Aplt. App. at 197. The district court also held that the provision "satisfies all four prongs of the O'Brien test and does not infringe on expression protected by the First Amendment." Id. at 199; see United States v. O'Brien, 391 U.S. 367 (1968). We likewise hold that the Amendments are not unconstitutionally overbroad and do not violate the First Amendment.

**1. Whether the Amendments Are Overbroad**

Appellants claim that the First Amendment protects much of the exposure and touching listed in § 1313(c), and that the Amendments are impermissibly directed at regulating the expressive message conveyed by adult entertainers through exposure and touching. They further contend that the Statute is overbroad, because it would chill a variety of protected expression. For instance, they argue that the Statute would apply to theatrical performers who use some of the enumerated exposure or touching to convey an artistic message.

Under First Amendment overbreadth doctrine, "a statute is facially invalid if it prohibits a substantial amount of protected speech." United States v. Williams, 553 U.S. 285, 292 (2008). However, "[t]he mere fact that one can conceive of some impermissible

13

applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." Id. at 303.  Moreover, "when the statute in question is aimed at regulating conduct—as opposed to 'pure speech'—our inquiry must also account for the state's legitimate interest in enforcing its otherwise valid criminal laws."  Ward, 398 F.3d at 1247 (internal quotation marks omitted).  Thus, "[p]articularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." Dodger's Bar & Grill, Inc. v. Johnson Cnty. Bd. Of Cnty. Comm'rs, 32 F.3d 1436, 1442 (10th Cir. 1994) (internal quotation marks omitted).

As relevant to the exposure and touching listed in the Sexual Solicitation Statute, "the Supreme Court has acknowledged that some forms of nude dancing may be properly characterized as expressive conduct within the outer perimeters of the First Amendment," but "the Supreme Court has not recognized a fundamental right to unrestrained nude dancing in all settings."  Id. at 1441.  And the Supreme Court has noted that certain types of "sexual activity . . . manifest[] absolutely no element of protected expression."  Arcara v. Cloud Books, Inc., 478 U.S. 697, 705 (1986).  Indeed, Appellants do not claim that the participation in sexual activity for a fee—prostitution—is a constitutionally protected activity.  See, e.g., Mini Spas, Inc. v. S. Salt Lake City Corp., 810 F.2d 939, 941 (10th Cir. 1987).  They likewise agree that the State may prohibit "offering or agreeing to a sex act for hire."  Aplt. Br. at 31.

14

Even assuming, without deciding, that the exposure and touching enumerated in the Amendments is constitutionally protected expressive conduct under some circumstances, we nonetheless conclude that the Amendments do not reach a substantial amount of protected speech. The Statute <u>only</u> prohibits participation in the enumerated exposure or touching done <u>with the intent to engage in, or pay for, sexual activity for a fee</u>. <u>See</u> Utah Code Ann. § 76-10-1313(1)(c). On the face of the Statute, it does not reach <u>any</u> touching or exposure done without that intent.

In other words, the Sexual Solicitation Statute does not criminalize the enumerated touching or exposure when done without the intent to participate in statutorily defined sexual activity for a fee. Thus, it does not reach the conduct of an actor clasping her breast as part of a stage performance or a wife touching her husband's buttocks during an embrace. The intent requirement contained in the Statute ensures that the Statute only criminalizes the enumerated touching and exposure <u>when done with the intent to participate in, for a fee, statutorily defined sexual activity</u>. Because the Statute is limited only to requesting or performing touching or exposure with the unlawful intent to engage in, or pay for, sexual activity for a fee, the Amendments do not, on their face, reach a substantial amount of constitutionally protected speech.

### 2. Whether the Amendments Place Too Great a Burden on Expression Protected by the First Amendment

Appellants claim that the Sexual Solicitation Statute places too great a burden on expression protected by the First Amendment, because the Amendments are not necessary to advance a substantial government interest. They also contend that, rather

15

than being intended to prevent people from engaging in sexual activity for a fee, the Amendments are aimed at "expressive activities which may tangentially be related to the offending conduct." Aplt. Br. at 37. The district court rejected these arguments and concluded that any incidental restriction on Appellants' First Amendment rights was no greater than necessary to further the State's interest in prohibiting prostitution. We agree.

The Supreme Court has held that "when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." United States v. O'Brien, 391 U.S. 367, 376 (1968). In determining if such incidental limitations are justified, courts apply the test articulated by the Supreme Court in O'Brien. Under this test,

> [A] government regulation is sufficiently justified [1] if it is within the constitutional power of the government; [2] if it furthers an important or substantial governmental interest; [3] if the governmental interest is unrelated to the suppression of free expression; and [4] if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

Id. at 377.

We assume, without deciding, that the Sexual Solicitation Statute may place some incidental limitations on First Amendment freedoms, but we conclude that each of the O'Brien factors is met in this case. Thus, any incidental limitation on expression protected by the First Amendment is justified. We will address each factor in turn.

First, it is within the power of the state to enact the Sexual Solicitation Statute. "The traditional police power of the States is defined as the authority to provide for the

16

public health, safety, and morals, and [the U.S. Supreme Court has] upheld such a basis for legislation." Barnes v. Glen Theatre, Inc., 501 U.S. 560, 569 (1991) (holding that a "public indecency statute furthers a substantial government interest in protecting order and morality"); see, e.g., Arcara, 478 U.S. at 711 ("A State has a legitimate interest in forbidding sexual acts committed in public . . . .").

In this case, Utah Code § 76-10-1313 contains the definition of and penalty for the crime of sexual solicitation. As mentioned previously, Appellants do not dispute that a State may enact laws to prevent sexual solicitation. Because Utah Code § 76-10-1313(c) only criminalizes participation in the enumerated exposure and touching when done with the intent to engage in, or pay for, sexual activity for a fee, we hold that the legislation is within the police power of the state.

Second, the Statute furthers an important government interest. We have held that a "city's interest in suppressing illegal sexual conduct is a 'substantial' or 'important' one." See Mini Spas, Inc., 810 F.2d at 941. Accordingly, we have previously upheld a city's dress code for massage businesses on the basis that the city had an important interest in suppressing prostitution. Id. at 941-42. Here, the Attorney General maintains that § 1313(c) is necessary in order to facilitate the detection of prostitutes—specifically, because, before offering or agreeing to engage in a sexual activity for a fee, some suspects may ask an undercover officer to prove that he is not an officer by engaging in some of the conduct contained in § 1313(1)(c). Indeed, the parties do not dispute that the Chief of the Salt Lake City Police Department testified before the Utah legislature that

17

the language contained in § 1313(1)(c) is necessary to prevent circumvention of Utah's prostitution laws.  And Appellants have not put forth anything to refute the Chief's testimony before the legislature.  We therefore hold that the Statute furthers an important government interest.

Third, the Sexual Solicitation Statute is unrelated to the suppression of speech. Appellants contend that §1313(1)(c) is "specifically aimed at adult entertainers," as part of the "State's efforts to enact censorship," and "is not really directed at those who offer or agree to sex acts for hire," Aplt. Br. at 28, 34, 37.  But there is no evidence that that is the case.  The Amendments to the Sexual Solicitation Statute are not directed at prohibiting adult entertainers or other performers from engaging in expressive conduct— instead, by their plain language, the Amendments are directed at preventing "sexual solicitation," and they prohibit only the participation in certain acts when done with the intent to engage in statutorily defined sexual activity for a fee.  In this case, the plain language of the statute, as well as the testimony of the Chief of Police before the legislature, make it clear that the statute is aimed at preventing sexual solicitation and prostitution, and there is nothing to indicate that the statute is intended to suppress any form of constitutionally protected expressive conduct.

Finally, the incidental restriction is no greater than necessary to further the state's interest in controlling prostitution.  Appellants contend that the prohibitions against self-touching and exposure are greater than is necessary to prosecute prostitutes.  But the Amendments only prohibit conduct done with the intent to engage in, or pay for, sexual

18

activity for a fee; thus, the Statute does not reach <u>any</u> exposure or touching done without that intent. Accordingly, the Amendments are carefully tied to the State's interest in preventing prostitution, and any other touching and exposure engaged in by adult entertainers or other performers does not fall within the ambit of the Statute.

For these reasons, the Amendments to the Sexual Solicitation Statute pass the <u>O'Brien</u> test; thus, any incidental restriction on First Amendment rights is justified.

And under the exacting analysis that we apply to facial challenges, <u>Ward</u>, 398 F.3d at 1246–47, we conclude that, on their face, the Amendments are not overbroad and do not impose too great a restriction on expression protected by the First Amendment. But we note that individuals could bring an as-applied challenge if the Statute were ever applied in a manner that suppressed expression protected by the First Amendment.

### B. Whether the Amendments to the Sexual Solicitation Statute Are Unconstitutionally Vague

"[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." <u>Kolender v. Lawson</u>, 461 U.S. 352, 357 (1983); <u>see</u> <u>United States v. Corrow</u>, 119 F.3d 796, 802 n.9 (10th Cir. 1997) ("[A] void-for-vagueness challenge to a state statute involves the Fourteenth Amendment's due process clause."); <u>cf.</u> <u>Williams</u>, 553 U.S. at 304 ("Vagueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause of the Fifth Amendment."). "A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary

19

intelligence a reasonable opportunity to understand what conduct it prohibits.  Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." Hill v. Colorado, 530 U.S. 703, 732 (2000).  But the Supreme Court has noted that "speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid in the vast majority of its intended applications."  Id. at 733 (internal quotation marks omitted).

This opinion will first consider § 1313(1)(c), and then consider § 1313(2).  It concludes that neither subsection is unconstitutionally vague.

### 1.  Whether § 1313(1)(c) Is Unconstitutionally Vague

The district court rejected Appellants' argument that § 1313(1)(c) was void for vagueness.  The court explained:

> [T]he primary requirement of Subsection (1)(c) is that there must be evidence of intent to engage in sexual activity for a fee plus one of the overt acts listed in (i) through (iv). The crime is clearly defined as intent plus a specifically identified act. The subsection not only clearly outlines the behavior and requisite intent to create culpability under the statute such that a person of ordinary intelligence would be on notice of what conduct is prohibited, but it also provides a clear legal standard for those who will enforce the statute. Accordingly, Subsection (1)(c) is not unconstitutionally vague.

Aplt. App. at 196.  This opinion will first consider (i) whether § 1313(1)(c) fails to provide fair notice of what conduct it prohibits, and (ii) whether § 1313(1)(c) authorizes or even encourages arbitrary or discriminatory enforcement.

### i.  Whether  1313(1)(c) Fails to Provide Fair Notice of the Conduct it Prohibits

"Vague laws may trap the innocent by not providing fair warning."  Grayned v.

20

City of Rockford, 408 U.S. 104, 108 (1972).  Nonetheless, "a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed."  Ward, 398 F.3d at 1252 (internal quotation marks omitted).  "Thus, when a statute might otherwise be vague, a scienter requirement mitigates the vagueness and makes the statute constitutional."  Id.; accord Hill, 530 U.S. at 732 (explaining that the concern that a contested provision was unconstitutionally vague was "ameliorated by the fact that [the provision at issue] contains a scienter requirement").

In this case, § 1313(1)(c) gives fair notice of what conduct it prohibits.  Indeed, the statute specifically enumerates the conduct it proscribes.  It prohibits a person, with the intent to engage in, or pay for, sexual activity for a fee, from

> offer[ing] or agree[ing] to engage in, or request[ing] or direct[ing] another to engage in any of the following acts:
> (i.) exposure of a person's genitals, the buttocks, the anus, the pubic area, or the female breast below the top of the areola;
> (ii.) masturbation;
> (iii.) touching of a person's genitals, the buttocks, the anus, the pubic area, or the female breast; or
> (iv.) any act of lewdness.

Utah Code Ann. § 76-10-1313(1)(c).  The provision clearly describes the prohibited acts, including delineating the conduct involved and the body parts at issue.  This language provides a person of ordinary intelligence the opportunity to understand what conduct the Statute prohibits.  See Hill, 530 U.S. at 732.

Appellants raise a concern about the term "masturbation," but we do not consider

21

the term "masturbation" to be vague, because § 1313(1)(c) prohibits actual masturbation, with the intent to engage in, or pay for, sexual activity for a fee. It does not prohibit actual masturbation done without the requisite criminal intent. See Ward, 398 F.3d at 1252 ("[A] scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice . . . ."). Likewise, § 1313(1)(c) does not criminalize "pretend masturbation," "simulated masturbation," "the appearance of masturbation," or similar language that might fail to provide adequate notice of the prohibited act. Accordingly, we think that the term "masturbation" provides sufficient notice and does not encourage arbitrary enforcement.

Appellants raise a concern about the phrase "any act of lewdness," but we do not consider the phrase to be vague, because the "commonsense canon of noscitur a sociis . . . counsels that a word is given more precise content by the neighboring words with which it is associated." Freeman v. Quicken Loans, Inc., 132 S. Ct. 2034, 2042 (2012); accord United States v. Phillips, 543 F.3d 1197, 1206 (10th Cir. 2008) ("Under the venerable interpretive canons of noscitur a sociis and ejusdem generis, the meaning of a catchall phrase is given precise content by the specific terms that precede it."). Thus, "any act of lewdness" must refer to conduct of the same type and seriousness as the exposure, touching, and masturbation otherwise enumerated in the other provisions of § 1313(1)(c).

Additionally, and most importantly, the statute contains a scienter requirement—it requires that the person do any act prohibited by § 1313(1)(c) "with intent to engage in sexual activity for a fee or to pay another person to commit any sexual activity for a fee."

22

Utah Code Ann. § 76-10-1313(1)(c). Thus, this requirement "mitigates [any] vagueness and makes the statute constitutional." Ward, 398 F.3d at 1252.

### ii. Whether § 1313(1)(c) Authorizes or Encourages Arbitrary or Discriminatory Enforcement

Appellants primarily argue that the scienter requirement—that the act must be done "with intent to engage in sexual activity for a fee or to pay another person to commit any sexual activity for a fee," Utah Code Ann. § 76-10-1313(1)(c)—does not provide law enforcement with sufficient guidance in enforcing the statute. Specifically, Appellants argue that the statute is vague because "there is no set standard as to what is an indication of a person's willingness to engage in a sex act for a fee." Aplt. Br. at 25. In other words, they contend that "[t]here is no way that an adult entertainer can put herself in the position of an observing officer, and know when she has crossed the line; because the line is entirely in [the officer's] mind." Id. at 28 (emphasis omitted). For this reason, Appellants claim that the statute "gives the officer an unlawful amount of discretion to decide when a crime has been committed." Id. at 25.

In determining if a scienter requirement "foster[s] arbitrary and discriminatory enforcement," we have explained that "[s]pecific intent is an objectively verifiable requirement with a long history in American jurisprudence." Ward, 398 F.3d at 1253. Thus, in Ward, we rejected a plaintiff's argument that, because of the intent requirement of a statute, the "analysis is subjective and left to the arbitrary assessment of the charging law officer." Id. We explained, "[i]t would be odd for specific intent, the very

23

requirement that may mitigate a law's vagueness . . . with respect to the adequacy of notice, to be the same requirement that renders a statute capable of arbitrary enforcement." Id. (internal quotation marks omitted).

In this case, the Sexual Solicitation Statute contains the requirement that a person act "with intent to engage in sexual activity for a fee or to pay another person to commit any sexual activity for a fee." Utah Code Ann. § 76-10-1313(1)(c). As Ward points out, "[s]pecific intent is an objectively verifiable requirement." 398 F.3d at 1253. To obtain a conviction under § 1313(1)(c), the prosecution would have to prove beyond a reasonable doubt that the person charged acted with the requisite intent. Under the "exacting analysis" required for facial challenges, Ward, 398 F.3d at 1247, we hold that § 1313(1)(c) is not unconstitutionally vague.

## 2. Whether § 1313(2) Is Unconstitutionally Vague

In its cross-appeal, the Attorney General argues that the district court erred in concluding that § 1313(2) of the Sex Solicitation Statute was unconstitutionally vague. Section 1313(2) reads as follows:

> An intent to engage in sexual activity for a fee may be inferred [by the factfinder] from a person's engaging in, offering or agreeing to engage in, or requesting or directing another to engage in any of the acts described in Subsection (1)(c) under the totality of the existing circumstances.

Utah Code Ann. § 76-10-1313(2) (emphasis added). The district court held that "[t]he language '[a]n intent to engage in sexual activity for a fee may be inferred from . . . the acts described in Subsection (1)(c) . . .' is circular, unnecessary, and mere surplusage. Additionally, the language 'under the totality of the existing circumstances' makes

24

Subsection (2) unconstitutionally vague." Aplt. App. at 194. We disagree.

The Supreme Court has held that "[a] vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." Grayned, 408 U.S. at 108-09. Thus, "if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them." Id. at 108.

In this case, § 1313(2) provides a standard—that "intent to engage in sexual activity for a fee may be inferred . . . under the totality of the existing circumstances." Utah Code Ann. § 76-10-1313(2). This provision instructs the factfinder to take into account all circumstances in determining whether the person charged with the offense had the requisite mindset—thus, the provision ensures that the factfinder cannot infer the intent from an isolated fact.

Indeed, this court has held that "a showing of mens rea may and often is inferred from circumstantial evidence." United States v. Haymond, 672 F.3d 948, 957 (10th Cir. 2012) (internal quotation marks omitted), cert. denied, 132 S. Ct. 2789, 183 L. Ed. 2d 651 (2012). To that end, the Tenth Circuit Criminal Pattern Jury Instructions state that "indirect or circumstantial evidence . . . [is] the proof of a chain of facts which point to the existence or non-existence of certain other facts," and that "[a]s a general rule, the law makes no distinction between direct and circumstantial evidence." Tenth Circuit Criminal Pattern Jury Instruction 1.07 (2011). Instead, "[t]he law simply requires that [the factfinder] find the facts in accord with all the evidence in the case, both direct and

25

circumstantial." Id. Thus, the factfinder may "draw reasonable inferences from the testimony and exhibits." Id.

Moreover, as a specific example in the context of criminal intent, this court has indicated that the required criminal intent in carjacking cases is determined from the totality of the circumstances. See United States v. Malone, 222 F.3d 1286, 1291 (10th Cir. 2000) ("[I]t is necessary to look at the totality of the circumstances to determine whether the words and actions of the defendants sufficiently demonstrate a conditional intent to cause serious bodily harm." (emphasis added)); see also United States v. Vallejos, 421 F.3d 1119, 1123 (10th Cir. 2005) ("We determine whether a defendant possesses the conditional intent necessary to support a carjacking conviction by considering the totality of the circumstances." (emphasis added) (internal quotation marks omitted)).[7] A provision stating that "intent may be inferred . . . from the totality of the existing circumstances" is not inconsistent with such caselaw.

In sum, the language of §1313(2) does not broaden a police officer's discretion to the point that the provision "authorizes or even encourages arbitrary and discriminatory enforcement," Hill, 530 U.S. at 732. Instead, it constrains the officer's discretion. Section 1313(2) is not impermissibly vague under the "exacting analysis" we apply to facial challenges. See Ward, 398 F.3d at 1247. Accordingly, we reverse the district

---

[7] In the context of a federal carjacking statute, the U.S. Supreme Court held that the mens rea requirement "can be satisfied even when the government proves that the defendant possessed only a 'conditional intent'" to harm the potential victim—i.e., an intent to harm the potential victim if the potential victim failed to comply with the defendant's demands. See Malone, 222 F.3d at 1291.

26

court's ruling holding § 1313(2) unconstitutional and striking it from the Sexual Solicitation Statute.

## CONCLUSION

"Because facial challenges push the judiciary towards the edge of its traditional purview and expertise, courts must be vigilant in applying a most exacting analysis to such claims." Ward, 398 F.3d at 1247. Applying this standard, we conclude that the challenged Amendments to the Sexual Solicitation Statute are not facially unconstitutional. Specifically, the Amendments are not overbroad because they do not reach a substantial amount of protected speech. Moreover, the Amendments pass the O'Brien test for incidental restrictions on First Amendment rights, and therefore do not place too great a burden on expression protected by the First Amendment. Additionally, we conclude that the Amendments are not unconstitutionally vague, because they provide fair notice of the prohibited conduct and sufficient guidance to law enforcement, and do not authorize or encourage discriminatory enforcement of the Sexual Solicitation Statute.

Accordingly, we affirm the district court's ruling as to the constitutionality of § 1313(1)(c), but reverse the district court's ruling that § 1313(2) is unconstitutionally vague.